## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

|  |  |
|---|---|
| DHD JESSAMINE, LLC, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 4:22-cv-01235-JD |
| | ) |
| vs. | ) |
| | ) |
| FLORENCE COUNTY, SOUTH CAROLINA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR AWARD
## OF ATTORNEY'S FEES AND EXPENSES

Plaintiff DHD Jessamine, LLC ("Plaintiff") obtained a jury verdict on its claims for disparate impact and disparate treatment in violation of the federal Fair Housing Act against Defendant Florence County, South Carolina (the "County"). As a result, Plaintiff is entitled to an award of the reasonable attorney's fees and expenses authorized to be awarded to the prevailing plaintiff under the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. Pursuant to Federal Rule of Civil Procedure 54 and 42 U.S.C. § 3613(c)(2), Plaintiff respectfully requests that the Court award reasonable attorney's fees and expenses to Plaintiff in the total amount of **One Million Four Thousand Eight Hundred Ninety-Six Dollars and Eight Cents ($1,004,896.08)** and amend the Judgment [ECF No. 190] to include the fee award in Plaintiff's total recovery against the County.

As discussed below, each of the applicable factors relevant to the Court's determination of a reasonable fee award supports granting Plaintiff the full amount requested. Also, as demonstrated by the materials submitted in conjunction with Plaintiff's fee request, the County has the ability to

pay the full amount of fees and expenses requested in addition to the actual and punitive damages the jury awarded to Plaintiff at trial.

## **INTRODUCTION**

The requested amount of the award for the attorney's fees and expenses incurred in this case is fully justified. The litigation efforts by Plaintiff's counsel were efficient and, as indicated by the result attained at trial, effective. Plaintiff's counsel implemented a successful trial strategy that secured a vindication of important civil rights that have been intentionally violated by the County. The jury awarded Plaintiff actual damages in the amount of $8,219,000.00 for injuries proximately caused by the County's violations of the Fair Housing Act, as well as punitive damages in the amount of $4,000,000.00 for the County's reckless indifference and hostility towards federally protected rights. (ECF No. 185.)

The affidavits, declarations, and additional supporting documentation provide ample justification for the Court's assessment of the reasonableness of Plaintiff's fee request under Local Civil Rule 54.02 and applicable law. In support of the Motion for Award of Attorney's Fees and Expenses, Plaintiff submits the affidavits and declarations of experienced practitioners with knowledge of customary, reasonable billing rates for civil rights cases and land use disputes in South Carolina. *See, e.g.,* Affidavit of Ellis R. Lesemann, Esq., attached as Exhibit A; Affidavit of Jeffrey S. Tibbals, Esq., attached as Exhibit B; Declaration of Reed N. Colfax, Esq., attached as Exhibit C; and the Affidavit of Scott Evans, Esq., attached as Exhibit D. Through detailed affidavits, these practitioners have confirmed that the hourly rates in this case are reasonable, the scope of the legal work and time expended was necessary and appropriate, and a highly successful and beneficial outcome was obtained. Full detail for each fee and expense entry is provided. *See* Plaintiff's Itemization of Attorney's Fees and Expenses, attached as Exhibit E.

Plaintiff's fee request is also supported by evidence of the County's ability to pay the full amount of attorney's fees and expenses requested in this case. A detailed analysis and evaluation of the County's financial information was performed by Steve Riley, CPA, CFE. Mr. Riley conducted an examination of the County's financial information, including, but not limited to, the County's recent audited financial reports and current budget (attached as Exhibits F, G and H). Based on this expert evaluation, which is attached as Exhibit I, Plaintiff has also demonstrated the County's ability to pay.  For these reasons, Plaintiff respectfully requests that the Court enter an award for the full amount of attorney's fees and expenses.

## LEGAL STANDARD

A party who prevails on claims under the Fair Housing Act may recover "a reasonable attorney's fee and costs." *See* 42 U.S.C. § 3613(c)(2). When calculating the amount of a reasonable fee to be awarded to a prevailing plaintiff in a civil rights case, the district "court should bear in mind that the function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel, and that the fee awarded should therefore be "adequate to attract competent counsel." *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (*quoting Blum v. Stenson*, 465 U.S. 886, 897 (1984)) (internal quotation marks omitted).

Under Local Civil Rule 54.02(A), "[a]ny petition for attorney's fees shall comply with the requirements set forth in *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978), and shall state any exceptional circumstances and the ability of the party to pay the fee." *See* Local Civ. Rule 54.02(A) (D.S.C.) In *Barber,* the Fourth Circuit specified the following factors for analysis: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill

required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. *Barber*, 577 F.2d at 226. The Court's determination of a reasonable fee award must be accompanied by detailed findings of fact with regard to the factors considered. *Id*. While the Court must consider all twelve of the factors, the Court is not required to rigidly apply these factors, as not all may affect the fee in a given case. *See CT & T EV Sales, Inc. v. 2AM Grp., LLC*, No. CA 7:11-1532-TMC, 2012 WL 3010911, at *1 (D.S.C. July 13, 2012).

Provided the factors are considered and findings duly made, such determination will not be overturned on appeal "unless under all of the facts and circumstances it is clearly wrong" because "the allowance of attorney's fees is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *See Shealy v. Dixon Hughes, PLLC*, No. 2:10-CV-714-DCN, 2011 WL 13323837, at *2 (D.S.C. Oct. 24, 2011) (quoting *Barber*, 577 F.2d at 226).

## ARGUMENT

Plaintiff's Motion for Attorney's Fees and Expenses should be granted because Plaintiff is entitled to recover its reasonable fees and costs as the prevailing plaintiff in a Fair Housing Act case and is seeking a reasonable number of hours to be compensated at reasonable rates.

## I.   PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEY'S FEES AND COSTS AS THE PREVAILING PARTY UNDER THE FAIR HOUSING ACT

Plaintiff is entitled to recover its reasonable attorney's fees and costs pursuant to the Fair Housing Act, which provides that a court "may allow the prevailing party … a reasonable attorney's fee and costs." *See* 42 U.S.C. § 3613(c)(2); *see also* Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."). In addition, the "great weight of authority in this circuit and others clearly establishes that a prevailing plaintiff [in a civil rights case] is entitled to compensation for reasonable litigation expenses." *See Gifford v. Horry Cnty. Police Dep't*, No. 4:16-CV-03136-MGL, 2023 WL 2696575, at *11 (D.S.C. Mar. 29, 2023), aff'd, No. 23-1471, 2024 WL 5166611 (4th Cir. Dec. 19, 2024) (*quoting Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986). This includes "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* (*quoting Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)).

Plaintiff prevailed at trial on both claims by proving by a preponderance of the evidence that the County engaged in discrimination prohibited by the Fair Housing Act. (ECF No. 185.) Although the relevant provision of the Fair Housing Act references the Court's desertion, fees should be awarded to a prevailing plaintiff "in the normal course." *See Abdelhalim v. Lewis*, 90 F.4th 265, 271 (4th Cir. 2024). In determining whether an award is proper under Section 3613(c)(2), the district court may rely upon cases interpreting § 1988 since "fee-shifting statutes' similar in language is a strong indication that they are to be interpreted alike." *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n. 2 (1989). Such fee-shifting provisions are intended "to ensure effective access to the judicial process for persons with civil rights grievances." *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). That is because "[i]f successful plaintiffs were

routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968). It is only in "*rare occasions,*" where the award of attorney's fees would be "unjust," should a prevailing plaintiff in a civil rights action be denied an attorney's fees award. *See Lefemine v. Wideman*, 758 F.3d 551, 555 – 56 (4th Cir. 2014) (emphasis added). Such a rare circumstance would be where a "plaintiff's success is purely technical or *de minimis*" or the plaintiff obtained "only a Pyrrhic victory." *See Pitrolo v. Cnty. of Buncombe, N.C.*, 589 F. App'x 619, 630 (4th Cir. 2014).

Plaintiff's victory in this case was resounding and deserved, being awarded $4 million in punitive damages and over $8.2 million in actual damages. Given the substantial jury verdict in its favor, and having succeeded on its claims for disparate impact and disparate treatment, Plaintiff is entitled to recover its reasonable attorney's fees and non-taxable expenses, in addition to taxable costs, allowed to a prevailing plaintiff under the Fair Housing Act.

## II.    THE FEES REQUESTED ARE REASONABLE AND APPROPRIATE

Plaintiff's requested fees are reasonable given the duration and scope of this case, the specialized expertise and resources required to prove that the County had violated the Fair Housing Act, and the extraordinary results achieved, along with the other factors set forth below.

The Supreme Court has held that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). In calculating a proper fee award for a prevailing plaintiff, courts take as the starting point the number of hours "reasonably expended on the litigation times a reasonable hourly rate." *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Hensley,* 461 U.S. at 433. The reasonableness of the computed lodestar figure should then be

measured under the factors set forth in *Barber*. *Id*. 577 F.2d at 226. For these reasons, and in accordance with Local Civil Rule 54.02(A), the Court must consider each of the *Barber* factors in determining whether the attorney's fees requested by Plaintiff are reasonable, appropriate, and justified in this civil rights case.

As set forth below, Plaintiff has met its burden of demonstrating the reasonableness of the hours and rates. *See Blum*, 465 U.S. at 896 n. 11 (providing that the fee applicant bears the burden to present evidence of the reasonableness of both the hours and the rates). Once the fee applicant has satisfied his burden, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *See Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (*citing Blum*, 465 U.S. at 892 n. 5). It is not sufficient for the opposing party to contest evidence submitted by the fee applicant with mere arguments. *See Brinker v. Guiffrida*, 798 F.2d 661, 668 (3d Cir. 1986) (noting that there is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant when the parties opposing fee application "merely argue that the hours claimed were excessive and duplicative" without presenting evidence).

### A.  The Requested Amount is Fully Recoverable under the *Barber* Factors.

In determining a reasonable fee, courts take into account that it can be "difficult to divide the hours expended on a claim-by-claim basis" when "the plaintiff's claims for relief involve a common core of facts or are based on related legal theories" because the efforts of the plaintiff's counsel may have been "devoted generally to the litigation as a whole." *Hensley*, 461 U.S. at 435. Multiple claims were asserted, some of which were dismissed.  However, all of the claims were closely related and based upon a common nucleus of fact.  Therefore, the full amount is awardable.

### i. Time and Labor Expended (the First *Barber* Factor)

The undersigned counsel represented Plaintiff at every phase of litigation for over three and a half years. Plaintiff's counsel expended significant effort but did so appropriately and in response to the manner in which this case was defended. The litigation was intensive, but successful. The legal work to obtain the jury verdict began in February 2022 and continued until November 2025, representing over three and a half years of active litigation.[1] Once the case was filed on April 15, 2022, significant expenditures of attorney effort were devoted to motions practices. A total of 39 motions were filed in the case with 21 motions being filed by the County. The undersigned counsel spent a significant amount of time opposing the County's dispositive motions, including the County's motion to dismiss and motion for partial summary judgment. Plaintiff also filed its own motions for partial summary judgment. Given the complexity of the case, the Court ordered supplemental briefing on "the contours of the constitutional claims in the case." (ECF Nos. 119 and 146, p. 4.)

Significant attention and efforts were devoted to discovery in this case. Plaintiff's counsel worked diligently to develop an evidentiary record that allowed Plaintiff to prevail on the Fair Housing Act claims at the summary judgment stage and at trial. Plaintiff noticed and took 11 depositions while the County noticed and took three depositions. The parties also exchanged numerous sets of interrogatories, requests for production, and requests for admission. In addition

---

[1] "[I]t is settled that a prevailing party may recover fees for time spent before the formal commencement of the litigation on such matters as attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery request," as "[t]his time is reasonably expended on the litigation." *See Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 250 (1985).

to drafting and responding to written discovery, Plaintiff incurred time devoted to organizing and analyzing all documents produced during the course of discovery.

Having conducted and defended 14 depositions and successfully opposition the County's dispositive motions, Plaintiff's counsel began preparations for trial. After receiving notice in June 2025 that the Court had set the matter for trial on October 27, 2025, the undersigned counsel began engaging in pretrial briefing and trial preparation. Plaintiff's pretrial preparation required extensive efforts, including sifting through thousands of pages to prepare proposed exhibits and deposition designations. Throughout the process, Plaintiff's counsel had to confer to discuss and decide upon approaches to trial strategy. Counsel also spent a reasonable amount of time researching relevant legal questions in connection with preparing Plaintiff's motion in limine, pre-trial brief, and Plaintiff's proposed jury instructions and proposed verdict form. The eight-day jury trial began on Monday, October 27, 2025, and concluded on Wednesday, November 5, 2025, when the jury rendered its verdict in favor of Plaintiff. The trial of this case was labor – and resource – extensive. Plaintiff's counsel prepared and delivered opening and closing statements, drafted direct and cross examinations, examined numerous witnesses, and conduct in-trial arguments and hearings, among other trial-related tasks.

The time and labor expended by the undersigned counsel were reasonable and necessary in convincing the jury that the County violated Plaintiff's constitutional rights. In determining whether the number of requested hours is reasonable, "courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *See Fox v. Vice*, 563 U.S. 826, 838 (2011). The essential goal in shifting fees "is to do rough justice, not to achieve auditing perfection" and "trial courts need not, and indeed should not, become green-

eyeshade accountants." *Id*. Plaintiff's request for reasonable attorney's fees is supported by a detailed itemization of billing entries, which provide significant detail as to how time was spent.

To succeed on a claim for disparate treatment liability under the Fair Housing Act, it was necessary to develop the factual record relating to the historical background of the challenged conduct, the sequence of events leading up to the County's actions relating to the moratorium and rezoning decision, the departures from normal procedure, as well as establishing the disproportionate impact of the County's actions. *See N. Carolina State Conf. of NAACP v. McCrory*, 831 F.3d 204, 220–21 (4th Cir. 2016) (*quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 266–67 (1977)); *see also* ECF No. 119, pp. 14 – 15. The issues involved in bringing the successful claims under the Fair Housing Act were interrelated with the issues raised in the substantive due process claim, which was ultimately unsuccessful.

Although Plaintiff did not prevail on every motion it filed or even claim it asserted, Courts will not exclude time spent on a losing motion if such fees were necessarily incurred in the course of an ultimate victory. *See, e.g*., *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998) (explaining that "an unsuccessful but reasonable argument in support of a successful claim may be compensable"). As the Supreme Court has explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. **Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. <u>The result is what matters</u>**.

*Hensley*, 461 U.S. at 435 (emphasis added). "If arguments that do not contribute to a plaintiff's ultimate success [in a civil rights case] were not eligible for compensation for that reason alone, then attorneys might be discouraged from raising novel but reasonable arguments in support of

their clients' claims and a disincentive for strong advocacy could result." *Jaffee*, 142 F.3d at 417. The ethics of the legal profession counsel an opposite approach. *See* Rule 1.3 cmt. 1, RPC, Rule 407, SCACR ("A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf"). The civil rights claims alleged in the Complaint involve a common core of facts and sought to vindicate the rights that had been violated by the County's misconduct.

The County took an aggressive posture throughout the case, which required a trial. While a defending litigant has a right to mount an unyielding defense, there are consequences to bear when a statute provides a right to a prevailing plaintiff to recover fees and expenses. Therefore, Plaintiff respectfully asks the Court to find that the time and labor expended in this case to be reasonable and necessary to the successful prosecution of the issues presented based on applicable law and the multiple affidavits and declarations confirming that the time and labor expended was proper. *See, e.g., Colfax Decl.* ¶¶ 17 – 18, 29; *Tibbals Aff.* ¶¶ 6 – 9; and *Evans Aff.* ¶¶ 5 – 6.

### ii. Novelty and Difficulty of the Questions Raised (the Second *Barber* Factor)

The procedural and substantive issues in this litigation were highly contested and complex. A matter is novel and difficult if there is a complicated procedural posture combined with many issues, numerous claims, and complicated facts in the case, spread over a long period of time. *See Super Duper, Inc. v. Mattel, Inc.,* 2009 WL 866463, at *3 (D.S.C. Mar. 31, 2009), *aff'd*, 382 F. App'x 308 (4th Cir. 2010). Indeed, courts have recognized that "[l]itigation under the Fair Housing Act is complex and poses difficult legal issues." *See Soderstrom v. MSP Crossroads Apartments LLC*, No. CV 16-233 ADM/KMM, 2018 WL 692912, at *4 (D. Minn. Feb. 2, 2018). The novelty and difficulty of the questions raised in this case are in favor of a full award to Plaintiff as the prevailing party on its claims under the Fair Housing Act.

### iii. Skill Required to Properly Perform the Legal Services Rendered (the Third *Barber* Factor)

This case involved adjudication of constitutional issues and required a higher level of legal skill. *See Colfax Decl*. ¶¶ 19 – 21, 29. The novelty and difficulty of the issues in this civil rights case supports an award of the full fee request. *See Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714, 719 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron,* 489 U.S. 87 (1989) ("An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience.").

The legal issues in this case were complex, as disparate treatment and disparate impact theories under the Fair Housing Act each have a unique burden-shifting mechanism. The development of the facts in "Not In My Backyard" affordable housing cases under the Fair Housing Act is difficult and requires unique abilities, strategy, and focus. *See Colfax Decl*. ¶¶ 19 – 20. The practitioner must develop not only the evidence of community resistance, but the nexus to government action. Fair Housing Act cases with "Not In My Backyard" and zoning aspects are particularly difficult to litigate, as each zoning case has unique aspects around which a strategy must be centered. *See Colfax Decl.* ¶ 20. The evidence in this case needed to be developed appropriately and methodically to avoid the dispositive motions filed by the County and the individual defendants. A successful outcome required proof that the County, through its officials, engaged in intentional discrimination in violation of the Fair Housing Act and convincing a jury that the County's actions were motivated in part by race or racial bias. A material level of skill was necessary to effectively perform these tasks. As detailed in the affidavits and declarations from other leading practitioners, the attorneys who have worked on this matter are experienced, effective litigators with an extensive background handling complex civil rights litigation. *See, e.g., Tibbals Aff*. ¶ 12; and *Evans Aff*. ¶ 5. This factor weighs in favor of granting Plaintiff's fee request.

### iv. Attorney's Opportunity Costs in Pressing the Instant Litigation (the Fourth *Barber* Factor)

The extensiveness and sensitive nature of this litigation created opportunity costs. The time commitment required to pursue a civil proceeding in federal court does preclude other employment opportunities. Because the undersigned counsel took this case on a contingent basis, there was no guarantee of the amount of payment, if any, they would receive. As such, the undersigned counsel's opportunity costs were high. It must also be noted that Plaintiff's counsel pursuit of claims that are contrary to the wishes of established members of the Florence community create opportunity costs as well. Accordingly, this factor weighs in favor of Plaintiff's fee request.

### v. Customary Fee for Like Work (the Fifth *Barber* Factor)

Plaintiff's counsel seeks to recover fees at their customary billing rates paid by clients in South Carolina and beyond. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (recognizing that a reasonable hourly rate is generally determined by the prevailing market rate, or "the rate a paying client would be willing to pay"); *see also Missouri v. Jenkins*, 491 U.S. 274, 285 – 89 (1989) (finding that the "reasonable attorney's fees" provided for under 42 U.S.C. § 1988 should compensate the work of paralegals, as well as that of attorneys). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community" for similar services by lawyers of reasonable comparable skill, experience, and reputation. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (*quoting Blum*, 465 U.S. at 895 – 96). The relevant community for determining the prevailing market rate is generally the community in which the court where the action is prosecuted sits. *Id*.

As detailed in the affidavits and declarations accompanying this fee request, the hourly rates charged in this case are reasonable for a case of this complexity in the District of South

Carolina. *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."); *see also Tibbals Aff.* ¶¶ 14 – 17; *Evans Aff.* ¶ 7. The billing rates for the attorneys and paralegals as set forth in the invoices are reasonable and customary rates for persons of their respective experience. The hourly rates for attorneys ranged from $500 per hour to $800 per hour. The paralegal rate was $195 per hour. The hourly rates in this case fall within the range of rates found reasonable by courts in this district in similarly complex case. *See, e.g., Black v. Mantei & Assocs.*, Ltd., No. CV 3:23-04149-MGL, 2024 WL 1681314, at *3 (D.S.C. Apr. 18, 2024), aff'd, 145 F.4th 528, 2025 WL 2151597 (4th Cir. 2025) (finding hourly rates ranging from $375 per hour to $700 per hour reasonable and within the prevailing market rates in Columbia legal community for like work).

In support of Plaintiff's fee request are affidavits of local lawyers who are familiar both with the skills of the undersigned counsel and more generally with the type of work in the relevant community. These practitioners each expressed the opinion that the hourly rates charged in this case are below the rates billed in the prevailing markets for similar services offered by attorneys of reasonably comparable skill and experience. Mr. Evans has devoted a large portion of their practice to civil rights cases against governmental entities. Based on their experience as civil rights litigators in South Carolina, Mr. Evans has confirmed that the hourly rates for attorneys and paralegals in this case are reasonable and within the range of current market rates in complex litigation. *See Evans Aff.* ¶¶ 3, 6 – 7.

Mr. Tibbals is an experienced trial attorney who has litigated zoning and land use cases, including civil rights claims under the United States Constitution, the South Carolina Constitution, and 42 U.S.C. § 1983, throughout the State of South Carolina. Prior to being admitted to practice

in South Carolina in 2004, Mr. Tibbals practiced law in Maryland, Virginia, and the District of Columbia. Based on his experience as a litigation attorney in cases against municipalities in South Carolina, Mr. Tibbals expressed his opinion that the hourly rates for the timekeepers in this case are reasonable and fall below the ranges set forth in the Fitzpatrick Matrix and Laffey Matrix. *See Tibbals Aff.* ¶¶ 2, 4, 14, 17.

Furthermore, the hourly rates charged in this case are far below the hourly rates that are regularly awarded in complex litigation matters in federal court in other jurisdictions, specifically matters involving claims under the Fair Housing Act. As detailed in his Declaration, Reed N. Colfax is the co-managing partner at Relman Colfax PLLC, a Washington D.C. law firm that is known for its expertise in fair housing and fair lending cases. Mr. Colfax, who graduated from Yale Law School in 1996, has over 25 years of experience litigating Fair Housing Act cases. *See Colfax Decl.* ¶¶ 2 – 5. Mr. Colfax has secured multiple jury verdicts in housing discrimination cases, including in *Saint-Jean v. Emigrant Mortgage Company*, No. 11 CV 2122 (SJ) (E.D.N.Y.) (jury verdict won on behalf of eight African-American and Hispanic borrowers who had been exploited by Emigrant Mortgage Company's predatory loan program); *Whyte v. Alston Management*, No. 10–81041 (S.D. Fla.) ($1 million jury verdict in familial housing discrimination case); *Anderson v. City of Saratoga Springs*, No. 1:05-cv-1369 (N.D.N.Y.) (jury verdict in favor of developer that denied right to develop affordable housing in upstate New York); *Kennedy v. City of Zanesville*, S.D. Ohio No. 2:03-cv-1047 ($10.8 million discrimination verdict for sixty-seven plaintiffs challenging City of Zanesville, Ohio, and Muskingum County's decades-long refusal to provide water services to a predominantly African-American community). *See Colfax Decl.* ¶ 8. Mr. Colfax confirmed that the rates of Plaintiff's counsel in this case are well below the customary rates charged by his firm in Fair Housing Act cases. *See Colfax Decl.* ¶ 17.

Plaintiff has also included the "Fitzpatrick Matrix" and the "Laffey Matrix" to illustrate that fees awarded in complex federal court litigation in the District of Columbia area are demonstrably higher than those being requested in this case. *See, e.g.*, the "Fitzpatrick Matrix," attached as <u>Exhibit J</u>; *see also* the "Laffey Matrix," attached as <u>Exhibit K</u>. Once a fee dispute is before it, a district court "may consider, but is not bound by," any matrix. *See De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025) (finding that the "court must consider all relevant evidence to determine 'the prevailing market rates in the relevant community,' including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its 'own personal knowledge'"). The Laffey Matrix is a useful starting point to determine fees but is not a required referent. *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009). The Fitzpatrick Matrix rates have been determined to be more in line with the prevailing market rate (the District of Columbia) and thus "more reasonable." *See J.T. v. D.C.*, 652 F. Supp. 3d 11, 28 (D.D.C. 2023). By way of comparison, the rates indicated by the Laffey Matrix for Mr. Lesemann and Mr. Kent would be $1,141 per hour and $948 per hour for Mr. Powell, while the Fitzpatrick Matrix rates would be $782 per hour for Mr. Lesemann, $771 per hour for Mr. Kent, and $674 per hour for Mr. Powell.

This evidence, along with the Court's own knowledge of the rates awarded in similar cases, establishes this factor in favor of the requested award. *See Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990) (finding that fee applicants may draw from a range of sources in demonstrating the prevailing market rates including "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community"). Accordingly, this factor supports the finding that the fees and expenses requested are reasonable.

### vi.  Attorney's Expectations at the Outset of the Litigation (the Sixth *Barber* Factor)

While confident in their abilities, Plaintiff's legal team is aware that relatively few cases asserting land use and civil rights violations against municipalities survive summary judgment and are successfully tried to verdict. *See, e.g., Evans Aff.* ¶ 6.  Recognizing the difficulty in achieving justice for Plaintiff, the undersigned counsel accepted this civil rights case with a contingency fee. This case involved substantial risks assumed by undersigned counsel, arising from the complexity of the legal and factual issues, the uncertainty of success on the asserted claims, and the opportunity cost of dedicating significant time and resources to a matter compensated at rates lower than those available for other work. This factor supports granting Plaintiff's full fees and expenses.

### vii.  Time Limitations Imposed by the Client or Circumstances (the Seventh *Barber* Factor)

As indicated in Mr. Lesemann's affidavit, the client and the circumstances presented time constraints during the litigation, as there was significant, time-sensitive effort to resuscitate the project in the face of the Count's discriminatory actions.  *See Decl. of Ellis R. Lesemann* at ¶ 20. This factor weighs in favor of the award.

### viii.  Amount in Controversy and Results Obtained (the Eighth *Barber* Factor)

Plaintiff achieved an excellent result at trial on the main issue presented in the litigation. Courts have consistently looked at degree of overall success in determining the reasonableness of a fee award. *See, e.g., Hensley v. Eckhart*, 461 U.S. 424 (1983). Although all of the *Barber* factors are important, the most critical factor is the "degree of success obtained." *See Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (*quoting Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Plaintiff was able to achieve the result that it sought in this litigation by proving that the County violated the Fair Housing Act when it passed the Moratorium and rezoned the Property to R-1 and obtained a

jury verdict for actual and punitive damages. The damages awarded by the jury in this Fair Housing Act case are significant.

"Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). "In addition, the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future." *Id*. at 575; *see also Hensley*, 461 U.S. at 444 n. 2 (noting that "[c]ivil rights plaintiffs with meritorious claims 'appear before the court cloaked in a mantle of public interest'"). Under these circumstances, where Plaintiff successfully proved that the County's conduct violated the law and obtained a verdict that will likely deter the County from engaging in the same misconduct in the future, "the fee award should not be reduced simply because [Plaintiff] failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.

Mr. Colfax has been litigating Fair Housing Act cases for more than twenty-five years and is generally aware of jury verdicts rendered in Fair Housing Act cases throughout the country. *See Colfax Decl*. ¶ 24. As Mr. Colfax stated in his Declaration, Plaintiff's success in this case is "by any measure, an excellent result of a jury trial and a substantial verdict for a fair housing act case." *Id*. Furthermore, it is not uncommon in civil rights cases for a fee petition to exceed the damages awarded to the plaintiff by the jury. *See Colfax Decl*. ¶ 22. However, this case is unique in that the damages awarded far exceed the fees sought. *Id*. at ¶ 23. Plaintiff was awarded damages more than ten times the amount requested for attorney's fees and expenses. This factor weighs heavily in favor of awarding the full amount of fees requested.

### ix. Experience, Reputation and Ability of the Attorney (the Ninth *Barber* Factor)

The undersigned attorneys have considerable experience and demonstrated ability in the performance of their duties on behalf of Plaintiff. The primary attorneys involved in this case on behalf of Plaintiff are Ellis R. Lesemann, Esq., and J. Taylor Powell, Esq., of Lesemann & Associates LLC.

Mr. Lesemann has represented clients in complex business litigation and contract disputes over the course of 27 years. Mr. Lesemann received his undergraduate degree from the South Carolina Honors College at the University of South Carolina after spending two years in the Honors Program at the University of Michigan at Ann Arbor. Thereafter, in 1998, he completed the four-year joint degree program in Law and International Business Studies (JD/IMBA) at the University of South Carolina and was admitted to the South Carolina bar in November 1998. Mr. Lesemann has been listed or recognized by Chambers USA, Best Lawyers in America, Super Lawyers, the Multi-Million Dollar Advocates Forum, the Charleston Business Magazine, the Greenville Business Journal, and has been rated "AV" by Martindale Hubbell. Over the course of his practice, Mr. Lesemann has successfully handled complex business litigation cases, including claims for violation of federally protected rights, fraudulent conveyance, copyright infringement, antitrust claims, and other matters.

Mr. Powell, a graduate of the Citadel and the Charleston School of Law, is an experienced trial attorney who has secured multi-million-dollar verdicts in a diverse range of civil litigation. Mr. Powell is an active member of the South Carolina Association for Justice. He has been recognized by the Million Dollar Advocates Forum and the Multimillion Dollar Advocates Forum. Mr. Powell has secured exceptional results for his clients through his zealous representation and resolute approach to litigation and trial.

Shaun C. Kent is a leading trial attorney with over twenty-five years of litigation experience in federal and state courts. Mr. Kent served as a former deputy solicitor and former public defender before entering private practice. He has handled a diverse range of civil and criminal cases with dedication to fighting for the rights of individuals. Having tried more than one hundred cases, Mr. Kent has substantial trial experience with a demonstrated record of success. Mr. Kent is highly regarded among his peers for his strategic approach to trial, courtroom presence, and fierce advocacy.

Whitney B. Harrison and Jordan Calloway with the law firm of McGowan, Hood, Felder & Phillips LLC were also involved in this case on behalf of Plaintiff. Ms. Harrison is a trial and appellate attorney with experience clerking in both of South Carolina's appellate courts and handling more than fifty appeals before the state's highest courts. She advises litigation teams on complex legal issues, has tried multiple cases to verdict, and has worked on landmark matters across civil, criminal, family, utility, and administrative law. She was the first woman to receive the South Carolina Bar's Trial and Appellate Advocacy Award and has taught constitutional law as an adjunct professor at Presbyterian College. Jordan Calloway graduated magna cum laude from the University of South Carolina School of Law. Mr. Calloway focuses his practice on mass torts, defective products, and medical malpractice.

In addition to the attorneys, other timekeepers have been involved in the representation of Plaintiff in this matter. Michelle A. Stewart, who possesses extensive experience in briefing complex legal issues in both state and federal courts, also contributed to the prosecution of Plaintiff's claims as necessary and appropriate. Ms. Stewart earned her J.D. from the Charleston School of Law in 2012 and received her B.A. in Philosophy from the College of Charleston in

2008. The fee request includes time for work performed by paralegals who worked collaboratively, but with supervision, in connection with the representation of Plaintiff in this matter

The experience, reputation and ability of the attorneys performing legal services in this case is supported by the affidavits and declarations of attorneys practicing in South Carolina and in other jurisdictions who have reviewed the fees incurred by the timekeepers involved in this case on behalf of Plaintiff. This factor supports a favorable finding as to the ninth *Barber* factor.

### x.   Undesirability of the Case Within the Legal Community in Which the Suit Arose (the Tenth *Barber* Factor)

This type of civil rights case against a municipality is undesirable due to the complexity of the claims involved and the nature of the discrimination. This case brought attention to the conduct by the members of County Council and County's elected officials, as well as prominent and wealthy members of the Florence community. Many attorneys would decline to take a case that involves allegations of unlawful discrimination based on race on the part of leaders in the Florence community, including lawyers and elected officials. *See Tibbals Aff.* ¶ 24. In general, the difficulties and potential repercussions involved with suing local governments do cause most law firms and attorneys to decline to even undertake this type of representation. *Id*. As such, this factor weighs in favor of awarding Plaintiff the full amount requested.

### xi.   Nature and Length of the Professional Relationship Between Attorney and Client (the Eleventh *Barber* Factor)

Plaintiff is one of a number of companies owned and operated by Mr. Douglas, Ms. Schaumber, and Mr. Schaumber. Although this is the first trial that counsel has handled for DHD's principals, counsel has provided legal advice and representation on prior matters. Additionally, counsel's office in Aynor, South Carolina is in the same building as the office of Mr. Douglas. Therefore, this factor also supports the requested award.

### xii.  Attorney's Fees Awards in Similar Cases (the Twelfth *Barber* Factor)

The amount of fee requested by Plaintiff is in line with attorney's fees awarded in similar cases under fee shifting statutes. *See, e.g., Tarlton for McCollum v. Sealey*, No. 5:15-CV-451-BO, 2021 WL 10319395, at *7 (E.D.N.C. Nov. 5, 2021), *aff'd sub nom. Gilliam v. Allen*, 62 F.4th 829 (4th Cir. 2023) (awarding over $6,200,000.00 in fees and over $224,000.00 in costs in civil rights case); *W. S. v. Daniels*, No. 19-2348, 2022 WL 621785, at *1 (4th Cir. Mar. 3, 2022) (affirming award of $629,605.64 in attorney's fees and costs under 42 U.S.C. § 1988 where the plaintiff was awarded $67,000.00 in compensatory damages, plus $67,000.00 in punitive damages); *Gifford v. Horry Cnty. Police Dep't*, No. 4:16-CV-03136-MGL, 2023 WL 2696575, at *13 (D.S.C. Mar. 29, 2023) (granting the plaintiff's motion for attorney's fees in Section 1983 case and awarding $878,467.80); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002) (affirming fee award that was more than five times the amount of the compensatory and punitive damage awards combined in Fair Housing Act action). Plaintiff obtained a substantial jury verdict in its favor. However, the Supreme Court has rejected the notion that attorney's fees in civil rights cases should be proportionate to the amount of damages a plaintiff recovers. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (holding that attorney fee award under Section 1988 was not required to be proportionate to amount of damages actually recovered and affirming fee award some seven times the amount of compensatory and punitive damages awarded). This factor heavily favors the granting of Plaintiff's Motion for Attorney's Fees and Expenses.

As the affidavits and supporting materials demonstrate, and as the *Barber* factors confirm, Plaintiff's fee request is reasonable and should be granted in full.

### B.  Summary of Fees and Expenses Requested Under 42 U.S.C. § 3613(c)(2)

Plaintiff respectfully moves the Court for a post-trial award of attorney's fees and non-taxable expenses incurred through the last day of trial on Wednesday, November 5, 2025, plus the additional attorney's fees incurred in connection with Plaintiff's post-trial Motion for Attorney's Fees and Expenses,[2] in the amount of **One Million Four Thousand Eight Hundred Ninety-Six and 08/100 Dollars ($1,004,896.08)**, which represents attorney's fees in the amount of $915,493.50, plus expenses incurred in this matter in the amount of $89,402.58. Accordingly, the Judgment entered by the Court should be amended to reflect Plaintiff's recovery of actual damages ($8,219,000.00), punitive damages ($4,000,000.00), and the full fee award ($1,004,896.08) for a total recovery of $13,223,896.08 against the County.

### III.    THE COUNTY HAS THE ABILITY TO PAY THE FULL AMOUNT OF THE FEES REQUESTED

The materials submitted in support of Plaintiff's Motion for Attorney's Fees and Expenses demonstrate the County's ability to pay the attorney's fees and expenses requested by Plaintiff. *See* Local Civ. Rule 54.02(A) (D.S.C.) ("Any petition for attorney's fees [ …] shall state any exceptional circumstances ***and the ability of the party to pay the fee***") (emphasis added). The County's financial information, including audited financial statements and annual budgets, has been studied and evaluated by two certified public accountants for the purpose of ascertaining the County's ability to pay the attorney's fees and expenses requested by Plaintiff in this action. *See Declaration and Evaluation Regarding Ability to Pay Actual Damages, Punitive Damages, and Attorney's Fees and Costs* (the "Ability to Pay Decl.").

---

[2] It is well-established that time spent in preparing and litigating fee claims is compensable under fee-shifting statutes. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 162 (1989) (finding that fee-shifting statutes favor providing compensation for all aspects of litigation including time spent preparing a fee application); *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 694 – 95 (9th Cir. 1991) (collecting decisions establishing that attorney's fees are recoverable for time spent litigating fee issue).

As confirmed in the Florence County Annual Financial Report for fiscal year July 1, 2023 through June 30, 2024, the County's "General Fund unassigned fund balance was $32,227,677, which may be used to meet the County's cash flow management needs and its ongoing obligations to citizens and creditors." The financial highlights for the fiscal year ended June 30, 2024 are highlighted below:

**Financial Highlights**

- The County's assets and deferred outflows of resources exceeded its liabilities and deferred inflows of resources at the close of the current fiscal year by $80,641,731 (net position). Of this amount, ($170,201,944) represents unrestricted net deficit. The General Fund unassigned fund balance was $32,227,677, which may be used to meet the County's cash flow management needs and its ongoing obligations to citizens and creditors. The remainder represents amounts accounted for in special revenue, debt service, and capital project funds which are restricted, committed, or assigned for the specific purposes of each fund.
- The County's total net position increased by $5,183,581 primarily due to the increases in capital grants and contributions, property tax revenue, sales tax revenue, and interest income.
- As of the close of the current fiscal year, the County's governmental funds reported combined ending fund balances of $243,202,654, an increase of $41,739,116 from the prior fiscal year. Total fund balance increased primarily because of the County issuing new bonds combined with growth in capital grants and contributions, property tax revenues, sales tax revenues, and interest income.
- At the end of the current fiscal year, the unassigned fund balance for the General Fund was $32,227,677, or approximately 37 percent of total General Fund expenditures and net transfers out.
- The County's long-term obligations increased by $31,320,313 or approximately 11 percent during the current fiscal year primarily as a result of the County issuing $54,322,500 in bonds and bond premiums combined with $4,899,000 in short-term General Obligation Bond issues.

Notably, the County's unassigned fund balance of $32,227,677 for fiscal year July 1, 2023 through June 30, 2024 increased $3,001,334 from the prior fiscal year. The County's Annual Financial Report for fiscal year July 1, 2022 through June 30, 2023, reflects that the County's General Fund unassigned fund balance was $29,226,343.00.

The financial highlights for the fiscal year ended June 30, 2023 are highlighted below:

**Financial Highlights**

- The County's assets and deferred outflows of resources exceeded its liabilities and deferred inflows of resources at the close of the current fiscal year by $75,458,150 (net position). Of this amount, ($165,354,373) represents unrestricted net deficit. The General Fund unassigned fund balance was $29,226,343, which may be used to meet the County's cash flow management needs and its ongoing obligations to citizens and creditors. The remainder represents amounts accounted for in special revenue, debt service, and capital project funds which are restricted, committed, or assigned for the specific purposes of each fund.
- The County's total net position increased by $32,937,580 primarily due to the increases in property tax revenue, sales tax revenue, and interest income.
- As of the close of the current fiscal year, the County's governmental funds reported combined ending fund balances of $201,463,538, a decrease of $3,789,188 from the prior fiscal year. Total fund balance decreased primarily as a result of the County retiring $15,640,000 of the $120,000,000 in Series 2021 General Obligation Bonds offset by growth in property tax revenues, sales tax revenues, and interest income.
- At the end of the current fiscal year, the unassigned fund balance for the General Fund was $29,226,343, or approximately 39 percent of total General Fund expenditures and net transfers out.
- The County's long-term obligations decreased by $32,788,182 or approximately 9 percent during the current fiscal year primarily as a result of the County retiring $31,102,288 in bonds and bond premiums offset by $4,825,000 in short-term General Obligation Bond issues.

Based on the FY 2026 Annual Budget report, it is stated that the General Fund Balance had growth of $3.10 million. *See Ability to Pay Decl.*, pp. 2 – 3. The total estimated General Fund Balance is $35.33 million. *Id.* at p. 3. As noted in the Ability to Pay Declaration, County Council has adopted a policy requiring the County to maintain twenty-five percent (25%) of annual expenditures in fund balance. According to the June 30, 2024 audited financial statements, the County's Total General Fund Expenditures were $85.54 million. Removing the County's 25% reserve requirement ($21.39 million) from the estimated General Fund balance ($35.33 million) leaves an ability-to-pay balance of $13.94 million. *See Ability to Pay Decl.*, pp. 2 – 3. The County's payment of the total actual and punitive damages awarded at trial ($12,219,000.00), plus an award of the full attorney's fees and expenses requested ($1,020,000.00) would leave an excess balance of $703,403.00 over the $21.39 million reserve. *See Ability to Pay Decl.*, p. 3.

The materials submitted in support of Plaintiff's Motion for Attorney's Fees and Expenses demonstrate the County's ability to pay the full fee award together with the judgment amount while maintaining an excess balance over the 25% reserve requirement. It is not anticipated that the County will contest its ability to pay the fees and expenses incurred by Plaintiff due to the County's

misconduct. Accordingly, Plaintiff is entitled to recover the full amount of attorney's fees and expenses incurred as a result of the County's discriminatory conduct in violation of the Fair Housing Act.

### CONCLUSION

For the reasons discussed above and set forth in the supporting affidavits, declarations, and materials accompanying this fee request, Plaintiff DHD Jessamine, LLC respectfully requests that the Court award Plaintiff the full amount of the reasonable attorney's fees and non-taxable expenses requested pursuant to 42 U.S.C. § 3613(c)(2) against Defendant Florence County, South Carolina in the amount of **ONE MILLION FOUR THOUSAND EIGHT HUNDRED NINETY-SIX AND 08/100 DOLLARS ($1,004,896.08),** along with such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:  *s/ Ellis R. Lesemann*
Ellis R. Lesemann (Fed. ID No. 7168)
erl@lalawsc.com
J. Taylor Powell (Fed. ID No. 12265)
jtp@lalawsc.com
LESEMANN & ASSOCIATES LLC
418 King Street, Suite 301
Charleston, SC 29403
Phone: (843) 724-5155

*ATTORNEYS FOR PLAINTIFF*

November 19, 2025
Charleston, South Carolina